UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12643-RWZ

AGERO ADMINISTRATIVE SERVICE CORP.

v.

FRANK CAMPOLO, *et al.*

ORDER

February 4, 2019

ZOBEL, S.D.J.

Plaintiff Agero Administrative Service Corp. ("Agero") filed suit against Frank Campolo, its former Vice President of Sales, and Road America Motor Club, Inc. ("Road America"), Campolo's current employer. The complaint asserts several claims related to both Campolo's alleged breach of his employment agreement with plaintiff and his current employment with Road America.

Plaintiff seeks an injunction prohibiting Campolo from working for Road America, soliciting plaintiff's customers, and using or disclosing any of plaintiff's confidential information or goodwill. Plaintiff also seeks to enjoin Road America from using plaintiff's confidential information or goodwill. The motion (Docket # 1-1) is allowed in part and denied in part.

I.      **Factual Background**

Agero and Road America both contract with various companies, including insurance carriers and car manufacturers, to provide towing services and roadside

assistance to consumers.  Campolo began working for Agero in 2004.  Thereafter, he executed an employment agreement that includes three provisions relevant to the instant dispute: (1) a confidentiality provision; (2) a customer non-solicitation provision; and (3) a non-compete provision.  Docket # 1-1 at 51-56 ("Agreement").[1]  On November 30, 2018, Campolo left his position as Agero's Vice President of Sales and on, December 3, 2018, he joined Road America as its Vice President of Sales.

## II.     Legal Standard

A preliminary injunction is an extraordinary remedy granted only if the movant demonstrates "(1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or lack of friction) between the injunction and the public interest."  Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).  "The sine qua non of this four-part inquiry is likelihood of success on the merits."  New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

Under Massachusetts law,[2] a restrictive covenant in an employment agreement is enforceable "only if it is necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest."  Boulanger v. Dunkin' Donuts Inc., 442 Mass. 635, 639 (2004) (collecting cases).

---

[1]     The parties agree that the Agreement, which Campolo signed in April 2015 and reaffirmed in June 2015, is the operative contract.

[2]     The Agreement contains a Massachusetts choice-of-law provision.  However, because the Agreement was executed prior to October 1, 2018, the Massachusetts Noncompetition Agreement Act does not apply.  Mass. Gen. Laws c. 149, § 24L.

2

Legitimate business interests include the protection of confidential information, goodwill, and trade secrets. Id. at 641.

## III. Analysis

### A. Likelihood of Success

On the merits, the core issue before the court is the enforceability of the customer non-solicitation provision and the non-compete provision. The parties do not contest the confidentiality provision.

#### 1. Customer Non-Solicitation Provision

> During the Restricted Period, [Campolo] will not directly or indirectly solicit, divert, take away, or attempt to divert or take away, from [Agero] any of the business or patronage of any of its actual or potential customers, clients, accounts, vendors, or suppliers with whom [Campolo] had material contact with or which whom [Campolo] had access to material Confidential Information regarding, or induce or attempt to induce any such customers, clients, accounts, vendors or suppliers to reduce the amount of business it does with [Agero].

Agreement at ¶ 3(c).[3]

The "Restricted Period" is defined as a period of 12 months following the termination of Campolo's employment with Agero, which may be extended by a "period

---

[3] Rather than identify the Agreement's many grammatical errors and muddy meanings with "[sic]," the Agreement's text is quoted verbatim.

of time equal to any period in which [Campolo] is in breach" of certain covenants.[4] Agreement at ¶ 3(a)(i).

Thus, the provision prevents Campolo from soliciting two categories of Agero's "actual or potential customers, clients, accounts, vendors, or suppliers": (1) those with whom Campolo had "material contact"; and (2) those regarding whom Campolo had "access to material Confidential Information." Id. at ¶ 3(c).

Because Section 3(c) contains a 12-month temporal limit and only applies to a subset of customers, I am persuaded that the covenant is reasonably tailored to protect plaintiff's legitimate business interests. Putting aside the parties' disagreement regarding the extent of Campolo's client interaction after closing a sale, Campolo undisputedly interacted with and solicited customers on behalf of Agero during his lengthy employment. Plaintiff has a cognizable interest in preventing Campolo from usurping its goodwill and this interest is particularly strong during the 12 months following his resignation and with respect to customers with whom Campolo had material contact or regarding whom he had access to certain sensitive information. Plaintiff is therefore likely to prove that the customer non-solicitation is valid and enforceable.

### 2. Non-Compete Provision

---

[4] Aside from the non-competition agreement which is addressed below, plaintiff does not allege that Campolo has violated these triggering provisions. Therefore, the court need not consider whether a temporal extension of the Restricted Period would be reasonable.

> [For the Restricted Period, Campolo] will not directly or indirectly, for his/her own account, or in any capacity on behalf of any other third person or entity, whether as an owner, officer, director, employee, partner, joint venture, consultant, investor, lender or otherwise, engage or assist others to engage, in whole or in part in any business that is in direct competition with [Agero] (which includes current or planned activities of [Agero]), in a business unit or area in which [Campolo] participated in on behalf of [Agero] (either directly or through his/her supervision or assistance of others) or in an area in which [Campolo] had access to Confidential Information ....

Agreement at ¶ 3(a)(i).[5]

Although the non-compete provision is similarly limited to a period of 12 months, it lacks a geographic limit and is far-reaching. Plaintiff concedes that its enforcement would prevent Campolo from working in the entire U.S. industry of roadside assistance services sales to insurance carriers.[6]

Particularly because non-compete provisions are only enforceable to the extent necessary to protect legitimate business interests, plaintiff has not met its burden to show that it will likely prove that this covenant is enforceable. The confidentiality provision and the customer non-solicitation provision protect plaintiff's interests such that enforcement of the non-compete at this stage would only protect plaintiff from "ordinary competition." Marine Contractors Co. v. Hurley, 310 N.E.2d 915, 920 (Mass. 1974) (explaining that ordinary competition is not a recognized business interest supporting enforceability under Massachusetts law).

---

[5] See supra, note 4.

[6] Notably, it is not clear that the provision is written to cover only the United States. See Agreement at ¶ 3(a)(i) ("[T]he Individual will not ... engage ... in a business unit or area in which the Individual participated in on behalf of the Company").

5

### i. Material Change Doctrine

Also counseling against an injunction enforcing the non-compete is the sharp factual dispute regarding alleged changes in Campolo's employment at Agero prior to his departure. Under Massachusetts law, a material change in the terms of employment may void previously executed restrictive covenants. See KNF & T Staffing, Inc. v. Muller, No. SUCV201303676BLS1, 2013 WL 7018645, at *3 n.4 (Mass. Super. Oct. 24, 2013) (collecting cases).

Defendants argue that, in the past two years, Agero changed Campolo's compensation plan and Agero's sales management structure, which caused a 50% decrease in Campolo's overall compensation. Before the court are several competing affidavits, each of which purports to explain these changes and the compensation decrease. See Docket ## 11-1; 9-1; 24-1 (Affidavits of Frank Campolo); Docket ## 12-3; 14-1 (Affidavits of Catherine Orrico).

Assuming, *arguendo*, that the enforceability of the non-compete provision hinges on whether there was a material change in Campolo's employment terms, significant fact issues remain that cannot be decided at this stage. See Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc., 759 F. Supp. 2d 110, 125 n.107 (D. Mass. 2010) ("[W]hen courts are faced with affidavits at odds and must make a credibility determination between them, courts generally do not issue a preliminary injunction, but rather leave the issue for a jury to resolve.").[7]

---

[7] Similarly, resolution of the parties' latest dispute as to Campolo's alleged access and/or deletion of Agero files is improper at this stage. See Docket ## 25, 27, 28, 29.

### B. Non-Merits Factors

The remaining preliminary injunction factors also support the conclusion that an injunction should issue with respect to the non-solicitation provision, but not the non-compete provision.

Plaintiff has demonstrated a sufficient risk of irreparable harm to justify an injunction enforcing the non-solicitation clause. But with the non-solicitation intact, the risk of harm resulting from Campolo's continued employment with Road America is slight. Furthermore, both defendants have repeatedly acknowledged the validity of the confidentiality provision and have affirmed their intent to abide by it. See Docket ## 9 at 3-4; 11 at 17-18; 29 at 2. This contractual obligation further mitigates any potential harm to plaintiff. Plaintiff's mere speculation that Campolo will use Agero's confidential information to unfairly compete does not establish irreparable harm.

The balance of the hardships analysis also tips in plaintiff's favor with respect to the non-solicitation provision. However, with the non-solicitation and confidential information provisions in place, enforcement of the broad non-compete would impose a disproportionate burden on Campolo. He would lose his current employment and, during the prohibited period, he could not do any work in the industry in which he has been engaged for over a decade. The record does not show the likelihood of significant losses by plaintiff from Campolo's competition.

7

Finally, the public interest is served by enforcing reasonable restrictive covenants, which, for reasons already articulated, include the customer non-solicitation provision but not the non-compete clause.

## IV. Conclusion

Plaintiff's motion (Docket # 1-1) is therefore allowed in so far as it seeks a preliminary injunction with respect to the customer non-solicitation provision and is denied with respect to the non-compete provision.

The parties shall jointly file within seven days a preliminary injunction as set forth herein.

    \_\_\_\_February 4, 2019_____        _____/s/Rya W. Zobel_____

            DATE                                                  RYA W. ZOBEL

                                                              SENIOR UNITED STATES DISTRICT JUDGE